UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

WILLIAM D. NOEL            )
                          )
        Plaintiff,         )
                          )
        v.                 )      Case No.: 2:17-CV-125
                          )
WAL-MART STORES EAST, L.P. )
                          )
        Defendant.         )

**MEMORANDUM AND ORDER**

Defendant Wal-Mart Stores East, L.P. ("Defendant" or
"Walmart") moves to dismiss Plaintiff William D. Noel's
("Plaintiff" or "Noel") Complaint and Amended Complaint pursuant
to Fed. R. Civ. P. 12(b)(6), asserting that they fail to state
claims upon which relief can be granted. Plaintiff amended his
original Complaint as a matter of course under Fed. R. Civ. P.
15(a)(1). Thus, the original Complaint (ECF 6) is no longer
before the court, and Defendant's motion to dismiss the original
Complaint (ECF 11) is denied as moot. Plaintiff's Amended
Complaint (ECF 12) includes four counts: breach of contract,
wrongful discharge, violation of public policy, and promissory
estoppel. For the reasons set forth below, Defendant's motion to
dismiss the Amended Complaint (ECF 15) is **granted**, and
Plaintiff's Amended Complaint is **dismissed without leave to
amend**.

**BACKGROUND**

Plaintiff Noel was employed by Defendant Walmart as a pharmacist manager in its St. Albans, Vermont location. On April 8, 2016, Walmart announced a new policy: new hires in Plaintiff's position would need to be certified to administer immunizations by April 16, 2016 and incumbents would need to be certified by October 16, 2016. *See* ECF 12, p. 2. Plaintiff suffers from trypanophobia, an extreme fear of needles. As a result, he is unable to administer immunizations.

Plaintiff sought an exemption from this new policy, and he completed Walmart's seven step process for securing an accommodation. On June 12, 2016, Plaintiff completed a "Confidential-Request for Accommodation Form." Along with this form, Plaintiff submitted a "Confidential-Accommodation Medical Questionnaire" form, in which Plaintiff's physician described Plaintiff's condition.

On July 19, 2016, Walmart sent Plaintiff a letter stating that he was granted an accommodation and would not have to administer immunizations. On October 18, 2016, Plaintiff participated in a phone call with Defendant's Health and Wellness Director and its Accommodation Service Center Manager. Defendant's representatives told Plaintiff that he would have to be certified to administer immunizations to continue in his position. Plaintiff asserts that "[b]y letter dated October 19,

2016, Defendant, acting through the Accommodation Service Center that had earlier granted the accommodation Plaintiff requested, constructively terminated Plaintiff's employment by requiring that he become certified to administer immunizations as a condition of retaining his employment." ECF 12, p. 3.

## PLAINTIFF'S COMPLAINTS

Plaintiff originally filed this case on June 28, 2017 in Vermont Superior Court, Chittenden Civil Division. Defendant removed the case to the United States District Court for the District of Vermont.[1] Plaintiff's Complaint was filed in this court on July 24, 2017. *See* ECF 6. Defendant filed a motion to dismiss the Complaint on July 24, 2017. *See* ECF 11. Plaintiff responded to the motion on August 23, 2017. *See* ECF 14. Defendant replied to the response on September 6, 2017. *See* ECF 21. Plaintiff filed an Amended Complaint on August 14, 2017. *See* ECF 12. Defendant filed a motion to dismiss the Amended Complaint on August 28, 2017. *See* ECF 15. Plaintiff responded to the motion on September 15, 2017. *See* ECF 24. Defendant replied to the response on October 12, 2017. *See* ECF 26.

The dates of the responses and replies to the Complaint and Amended Complaint overlap, leading to a slightly confusing situation. Plaintiff amended his Complaint as a matter of course

---

[1] The removal was proper, as the parties are diverse and the amount in controversy exceeds $75,000. *See* ECF 1, p. 2-4.

under Fed. R. Civ. P. 15(a)(1) because he filed his Amended Complaint within 21 days of Defendant's motion to dismiss the original Complaint. Thus, the Amended Complaint is controlling. Plaintiff's original Complaint is no longer before the court, and Defendant's motion to dismiss the original Complaint (ECF 11) is denied as moot.

Plaintiff's Amended Complaint sets forth general allegations and four specific counts.

Count I alleges breach of contract. Plaintiff contends that his contract of employment with Defendant included, as of July 19, 2016, an exemption from the requirement to be certified to administer immunizations. Plaintiff asserts that Defendant breached that contract when it constructively terminated Plaintiff's employment on October 19, 2016 by requiring that he become certified to administer immunizations.

Count II alleges wrongful discharge. Plaintiff erroneously states that "Defendant is a qualified individual with a disability" when he clearly meant to say "Plaintiff is a qualified individual with a disability" (emphasis added). Plaintiff contends that Defendant recognized him as disabled, granted him an accommodation, and then willfully refused to honor that accommodation—thereby unlawfully failing to accommodate his disability and terminating his employment. In the alternative, Plaintiff contends that Defendant discriminated

4

against him "on account of his inability to perform a non-essential function of his position, which inability Defendant knew to be caused by a physical or mental impairment within the meaning of 21 V.S.A. § 495d." Plaintiff argues that Defendant's conduct constitutes constructive discharge, failure to accommodate Plaintiff's disability, unlawful discrimination, and wrongful discharge in violation of 21 V.S.A. § 495.

Count III alleges violation of public policy. Plaintiff asserts that it is contrary to the public policy of Vermont for employers to grant accommodations and then refuse to honor such accommodations, resulting in constructive discharge.

Count IV asserts promissory estoppel. Plaintiff states that he relied on Defendant's accommodation procedures when he completed all of the required forms and was granted an exemption. Plaintiff argues that Defendant is estopped from denying the accommodation it granted to Plaintiff. Plaintiff also argues that in denying the accommodation that had previously been granted, Defendant constructively discharged him.

For all counts, Plaintiff alleges that he has suffered economic loss, emotional distress, and other damages as a direct and proximate consequence of Defendant's actions.

**DOCUMENTS INCORPORATED BY REFERENCE**

Generally, if the court is to consider material presented to it that was not included in the complaint, the motion to dismiss "shall be treated as one for summary judgment" and "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Id.* (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). "[W]hen a plaintiff chooses not to attach to the complaint [] a [document] [] which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

Plaintiff Noel relies heavily on three documents which he has failed to include with his Amended Complaint even though they are integral to assessing the plausibility of his allegations. The documents are: the April 8, 2016 announcement, the July 19, 2016 letter, and the pharmacy manager job description. Plaintiff relies on all three of these documents,

and he is not prejudiced by the court's recognition and

consideration of them. The Second Circuit has explained that

> generally, the harm to the plaintiff when a court
> considers material extraneous to a complaint is the
> lack of notice that the material may be considered.
> *Cortec*, 949 F.2d at 48. Accordingly, "[w]here
> plaintiff has actual notice of all the information in
> the movant's papers and has relied upon these
> documents in framing the complaint the necessity of
> translating a Rule 12(b)(6) motion into one under Rule
> 56 is largely dissipated." *Id*.

*Chambers*, 282 F.3d at 153.

Plaintiff certainly has notice of all three of these

documents. He personally received both the April 8, 2016

announcement and the July 19, 2016 letter. The court's

consideration of the pharmacy job description is slightly more

complicated, as it is dated November 17, 2016—nearly one month

after Plaintiff asserts that he was constructively terminated.

However, this was essentially just a codification of the

immunization policy which was announced on April 8, 2016.

Further, Plaintiff's Amended Complaint specifically refers to

the "alteration of his job description." ECF 12, p. 2. Plaintiff

has not contended that the November 17, 2016 document is an

inaccurate job description, nor does he voice any concerns in

his opposition to the motion to dismiss about the court

considering any of the three documents Defendant submitted. *See*

ECF 24. To the contrary, Plaintiff acknowledges Defendant's

exhibits and uses them in his arguments opposing the motion to dismiss.

Thus, the court will consider these three documents in ruling on Defendant's motions to dismiss.

**DISCUSSION**

## I. Motion to dismiss standard

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This facial plausibility standard requires that a plaintiff plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).

The court must take a complaint's factual allegations to be true and must draw all reasonable inferences in the plaintiff's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009); *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, the court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

## II.  ADA case law provides guidance in analyzing claims brought under the VFEPA

The Vermont Fair Employment Practices Act ("VFEPA") makes it unlawful for an employer to discriminate against a "qualified individual with a disability." 21 V.S.A. § 495(a)(1); *see Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 9, 184 Vt. 1, 8, 955 A.2d 1082, 1088. A "qualified individual with a disability" is a person "who is capable of performing the essential functions of the job or jobs for which the individual is being considered with reasonable accommodation to the disability." § 495d(6)(A).

The VFEPA and the Americans with Disability Act ("ADA") are closely related. Defendant contends that "VFEPA is construed consistently with the Americans with Disabilities Act, and, therefore, it is proper to consider case law interpreting the ADA when assessing claims brought under the analogous state law." ECF 15, p. 5-6 n.3. This court has previously highlighted the similarities between the VFEPA and the ADA. *See Mueller v. Rutland Mental Health Servs., Inc*, 2006 WL 2585101, at *2 (D. Vt. Aug. 17, 2006) ("The standards and burdens of proof under the VFEPA are identical to those under the ADA. Plaintiff's state-law disability-discrimination claim survives or fails on the same basis as his ADA claim.)" (citing *Violette v. IBM Corp.*, 962 F.Supp. 446, 449 (D. Vt. 1996)). In an unpublished entry order, the Vermont Supreme Court explained that the VFEPA

standards are "borrowed" from the ADA. *See Vail v. Vt. Agency of Transp.*, 2013 WL 2631328, at *5 (Vt. 2013).

While there are some differences between the VFEPA and the ADA, the disability provisions of VFEPA "are patterned after § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794." *Terino v. Woodstock Resort Corp.*, No. 2:15-CV-00143, 2017 WL 2804919, at *6 (D. Vt. June 28, 2017) (citing *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180 (1995)). Thus, "federal case law provides guidance in construing them." *Connors v. Dartmouth Hitchcock Med. Ctr.*, No. 2:10-CV-94, 2013 WL 3560946, at *5 (D. Vt. July 11, 2013).

## III. *Stevens v. Rite Aid*

The Second Circuit recently issued an opinion in a case with facts nearly identical to the case currently before the court.[2] In *Stevens v. Rite Aid*, Rite Aid revised its job description to require pharmacists to hold a valid immunization certificate. 851 F.3d 224, 227 (2d Cir. 2017), cert. denied, 138 S. Ct. 359 (2017). A pharmacist named Stevens received notice of this new immunization policy and submitted a note from his treating physician stating that he was "needle phobic and cannot

---

[2] Except that the claims were brought under the ADA instead of the VFEPA. Based on its discussion in Section II, the court finds this case highly persuasive.

administer immunization by injection." *Stevens*, 851 F.3d at 227.

Stevens wrote a letter to his district manager

> explaining that his trypanophobia causes him to
> experience "lightheadedness, paleness, and a feeling
> that I may faint" and that, as a result he "would
> never even consider trying to become an immunizing
> pharmacist." Stevens also stated that he believed his
> condition was a covered disability under the ADA, and
> requested that Rite Aid provide him with a reasonable
> accommodation.

*Id*. Rite Aid officials told Stevens that "the ADA did not apply

to trypanophobia, that Rite Aid was not required to accommodate

Stevens, and that Stevens would lose his job unless he

successfully completed immunization training." *Id*. Stevens told

his district manager that he would not be able to complete the

training. *Id*. A Rite Aid official then gave Stevens a

termination later, "informing him that he was being terminated

for refusing to perform customer immunizations, which were an

essential function of his job." *Id*. at 227-28.

Stevens brought claims under the ADA, asserting that Rite

Aid's conduct constituted failure-to-accommodate, retaliation,

and wrongful termination. The Second Circuit disagreed. The

court explained that once Rite Aid made a business decision to

start requiring pharmacists to perform immunizations, this

became an essential part of the job of a pharmacist. *Id*. at 229.

Since Stevens' disability made him unable to perform this

essential job task, he was not a qualified individual for that

job. *Id.* at 231. Thus, no reasonable juror could conclude that Rite Aid's conduct constituted failure to accommodate, discrimination, or wrongful discharge. *Id.*

There are two primary differences between the instant case and *Stevens*. First, in the instant case, Walmart initially gave Noel a letter stating that administering immunizations was not an "essential" function of his job (even after the immunization policy was enacted). *See* ECF 15-2, p. 3. Noel places a considerable amount of weight on this letter in his Amended Complaint and his pleadings. Noel has not submitted this letter to the court, but it is incorporated by reference as discussed above. Noel contends in his Amended Complaint that "[b]y letter dated July 19, 2016, Defendant granted the accommodation Plaintiff had requested, without qualification or condition. In doing so, Defendant acknowledged that Plaintiff was capable of performing the essential functions of his position, and that it was reasonably accommodating his disability." ECF 12, p. 2-3. This is plainly not accurate. The July 19, 2016 letter specifically stated that "the company reserves the right to revisit this approval at any time to review the effectiveness of the accommodation, its impact on business operations and co-workers, and/or if there is a material change in either your situation or in the business needs of the facility." ECF 15-2,

p. 3. Thus, this letter has little value to Plaintiff in attempting to distinguish his situation from that in *Stevens*.

Second, the *Stevens* case took place in New York and the claims were brought under the ADA, not the VFEPA. Plaintiff contends that this sets *Stevens* totally apart from the instant case. However, as discussed above, the VFEPA standards are derived from the ADA. Thus, even if *Stevens* does not completely control the outcome of this case, it provides persuasive guidance for how to rule on the present motion to dismiss.

## IV. Plaintiff is not a qualified individual with a disability because administering immunizations is an essential job function

### A. "Qualified individual" and "essential job function" standards

In *Stevens*, the Second Circuit explained that "employers may not discriminate against people with disabilities that do not prevent job performance, but when a disability renders a person unable to perform the essential functions of the job, that disability renders him or her unqualified." 851 F.3d at 229. The Second Circuit also explained that in evaluating whether a particular job function is "essential," courts should consider "the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the

work experience of current employees in similar positions." *Id*. at 229 (citing *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013)).

Courts "must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position," but "no one listed factor will be dispositive." *Id*. (citations and internal quotation marks omitted). Courts must conduct "a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." *Id*. (citing *McMillan*, 711 F.3d at 126).

**B.   Discussion**

Administering immunizations is an essential function of Walmart's pharmacy manager position. Thus, Plaintiff is not a qualified individual because his disability prevents him from being able to perform this essential function.

Plaintiff argues that administering immunizations is not an essential function, and largely bases his argument on the July 19, 2016 letter he received from Defendant. In that letter, Defendant stated that administering immunizations "is not considered to be an essential function of . . . [Plaintiff's] position." ECF 12, p. 2. However, Defendant clearly qualified this statement by explaining that "[t]his approval is subject to further review in case your job description is revised in the future" and that the company reserves the right to revisit the

approval of Plaintiff's accommodation at any time. ECF 15-2, p. 3.

In his Amended Complaint, Plaintiff specifically describes the April 8, 2016 announcement which described administering immunizations as a "minimum qualification" of his job. ECF 12, p. 2. Plaintiff also states that he "sought exemption from this alteration of his job description." ECF 12, p. 2 (emphasis added). However, despite referring to and relying on the description of his job, Plaintiff failed to include with his Amended Complaint a copy of the job description.

As discussed above, Defendant included a copy of the pharmacy manager job description with its motion to dismiss, and this document is incorporated in Plaintiff's Amended Complaint by reference. This job description, which was published on November 17, 2016, states under the "Essential Functions" heading that "*[a]n individual must be able to successfully perform the essential functions of this position with or without a reasonable accommodation*." ECF 15-3, p. 1 (emphasis in original). Listed as an essential function is: "Provides comprehensive patient care to customers by . . . administering immunizations[.]" ECF 15-3, p. 1. While this job description is dated nearly a month after Plaintiff was informed that he would be terminated if he did not comply with the new policy, it clearly shows that Walmart has listed administering

immunizations as an essential function of the pharmacy manager job.

In *Stevens*, the Second Circuit explained that written job descriptions are helpful in determining whether a task is an essential job function. *See* 851 F.3d at 229. Here, we essentially have the April 8, 2016 announcement and the November 17, 2016 job description (which both indicate that administering immunizations is an essential job function) pitted against the July 19, 2016 letter (which indicates that administering immunizations is not an essential job function). While this could ordinarily be viewed as a factual dispute that would need to be sorted out through discovery and/or a trial, the court can make a decision at this stage for the following reasons.

First, the July 19, 2016 letter was a conditional determination—it stated that it was subject to revision in the future. *See* ECF 15-2, p. 3. Second, the November 17, 2016 job description came later in time than the July 19, 2016 letter, and therefore even if administering immunizations was not considered an essential job function as of July 2016, it certainly was as of November 2016. *See* ECF 15-3, p. 1. Third, as explained in *Stevens*, the court must give "considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." *Stevens*, 851 F.3d at 229 (citation omitted). Walmart has listed administering

immunizations as an essential function in the pharmacy manager job description and vigorously asserts its essentiality in its motion to dismiss. Finally, in *Stevens*, nearly this exact same factual situation occurred—Rite Aid revised its job description to state that administering immunizations was an essential function. The Second Circuit held that the evidence, viewed in the light most favorable to Stevens, compelled a finding that administering immunizations was an essential job function. *See Stevens*, 851 F.3d at 229.

A couple of differences exist between the present case and *Stevens* that are relevant to the essential job function determination. First, *Stevens* proceeded all the way through a trial, with evidence being presented by both sides. In the instant case, we are obviously at the motion to dismiss stage. However, the court is comfortable finding that the documents Plaintiff has incorporated in his Amended Complaint by reference compel a finding that administering immunizations was an essential function of his job. The second difference is that in *Stevens*, there was no letter such as the July 19, 2016 letter here conditionally stating that administering immunizations was not an essential function. Again, while this ordinarily could be a disputed question of fact, the court is confident that it can find that there is no reasonable dispute here. The July 19, 2016 letter was a mere conditional exemption, explicitly subject to

revision at any time. By contrast, Walmart currently asserts that administering immunizations is an essential function, and it has previously indicated so in its company-wide announcement on April 8, 2016 and the company-wide job description on November 17, 2016.

Thus, the court concludes that the documents Plaintiff incorporated in his Amended Complaint by reference compel a finding that administering immunizations was an essential function. As Plaintiff is unable to perform this essential function, he is not a qualified individual for the pharmacy manager job. *See Stevens*, 851 F.3d at 229.

## V. Plaintiff's Wrongful Discharge cause of action (Count II) is dismissed for failure to state a claim

Plaintiff is not a qualified individual with a disability because he is unable to perform the essential job function of administering immunizations. As a result, Plaintiff has failed to state necessary elements for his failure to accommodate and disability discrimination claims. Since Plaintiff's wrongful and constructive discharge claims are predicated on the success of his failure to accommodate and discrimination claims, all claims in Count II must be dismissed.

### A. Plaintiff's assertions and relevant legal standards

In Count II, under the heading of "Wrongful Discharge," Plaintiff alleges that "Defendant's conduct constitutes

constructive discharge, failure to accommodate Plaintiff's
disability, unlawful discrimination and wrongful discharge in
violation of 21 V.S.A. § 495." ECF 12, p. 4. It is a bit unclear
what exactly Plaintiff means to assert here, but upon
clarification in Plaintiff's response to Defendant's motion to
dismiss, it appears that plaintiff is asserting that Defendant
"either failed reasonably to accommodate what it recognized to
be a disability, or discriminated against Plaintiff on account
of that disability." ECF 24, p. 5. Logically, Plaintiff is then
asserting that this failure to accommodate and/or discrimination
led to his wrongful and/or constructive discharge.

### 1. Failure to accommodate standard

"To make [out] a prima facie failure to accommodate claim,
Plaintiff must show that (1) Plaintiff is a person with a
disability under the meaning of the VFEPA; (2) Plaintiff's
employer had notice of [his] disability; (3) with reasonable
accommodation, Plaintiff could perform the essential functions
of her position; and (4) the employer refused to make such
accommodations." *Connors v. Dartmouth Hitchcock Med. Ctr.*, 12 F.
Supp. 3d 688, 699–700 (D. Vt. 2014) (citing *McBride v. BIC
Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir.
2009)). The Second Circuit has explained that

> [i]t is important to bear in mind that the issue is
> whether a reasonable accommodation would have enabled
> [Plaintiff] to perform that essential function, not

whether [] he could perform his other duties as a
pharmacist. "A reasonable accommodation can never
involve the elimination of an essential function of a
job." *Shannon* [*v. New York Transit Auth.*], 332 F.3d
[95,] 100 [(2d Cir. 2003)].

*Stevens*, 851 F.3d at 230.

### 2. Disability discrimination standard

Disability discrimination claims under the VFEPA are
subject to the burden-shifting analysis established by the
Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792
(1973). *See Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72,
¶ 15, 175 Vt. 413, 421, 834 A.2d 37, 44. Pursuant to this
framework, "[a]t the outset, the plaintiff has the burden of
establishing a prima facie case of employment discrimination."
*Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 24, 176 Vt. 356,
366, 848 A.2d 310, 320. To establish a prima facie case of
disability discrimination, the plaintiff must show that he is a
qualified disabled individual, that he suffered an adverse
employment action, and the action occurred under circumstances
that give rise to an inference of discrimination. *Ross v. Times
Mirror, Inc.*, 665 A.2d 580, 586-87 (Vt. 1995).

If the plaintiff is able to present a prima facie case of
discrimination, the burden shifts to the defendant to present a
legitimate, non-discriminatory reason for the adverse employment
action. This burden is one of production, not persuasion.
*Boulton*, 2003 VT 72 ¶ 15. If the defendant meets this burden,

the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons given are merely a pretext for discrimination. *Id.*

**B. Discussion**

As discussed in Section IV above, the documents Plaintiff has incorporated by reference in his Amended Complaint compel a finding that administering immunizations is an essential function of the pharmacy manager job. Plaintiff is unable to perform this essential function and therefore has failed to plead plausible failure-to-accommodate and disability discrimination claims.

To plead a plausible failure to accommodate claim, Plaintiff must show that "with reasonable accommodation, Plaintiff could perform the essential functions of her position." *Connors*, 12 F. Supp. at 699–700 (citing *McBride*, 583 F.3d at 97. It is important to note that "[a] reasonable accommodation can never involve the elimination of an essential function of a job." *Stevens*, 851 F.3d at 230 (citation omitted). Plaintiff has failed to allege that there was a reasonable accommodation available that would have allowed him to perform the essential function of administering immunizations. *See Stevens*, 851 F.3d at 230; *Vail*, 2013 WL 2631328, at *8 (citing *McBride v. BIC Consumer Prod. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009) ("The plaintiff bears the burdens of both

production and persuasion as to the existence of some
accommodation that would allow her to perform the essential
functions of [his] employment."). Instead, Plaintiff fully
admits that there is no scenario in which he would be able to
perform this function. *See* ECF 12, p. 2. An accommodation is not
reasonable if it would eliminate an essential job function. *See*
*Mueller*, 2006 WL 2485101, at *3 ("reasonable accommodation []
does not mean elimination of any of the job's essential
functions.") (citation and quotation marks omitted). Since there
is no accommodation that would lead to Plaintiff being able to
perform this essential function, Plaintiff has failed to state a
plausible failure to accommodate claim.

Plaintiff's disability discrimination claim also fails.
Being a qualified individual is an essential element of a
disability discrimination claim. *See Ross*, 665 A.2d at 586-87.
Since Plaintiff is not a qualified individual for the pharmacy
manager position, he is unable to state a plausible disability
discrimination claim. Further, to the extent Plaintiff means to
assert a discrimination claim along the lines of disparate
treatment, he has wholly failed to allege such a claim. The
essential job function of administering immunizations was a
company-wide policy, as demonstrated by the April 8, 2016
announcement and the November 17, 2016 job description.

Thus, Plaintiff has failed to state plausible failure-to-accommodate and discrimination claims. As any potential wrongful/constructive discharge claim is predicated on Plaintiff's failure-to-accommodate and discrimination claims, Plaintiff does not state a plausible wrongful or constructive discharge claim. As a result, all claims in Count II of Plaintiff's Amended Complaint are dismissed for failure to state a claim.

## VI. Plaintiff's Violation of Public Policy cause of action (Count III) is dismissed for failure to state a claim

Plaintiff's violation of public policy claim is easily dismissed upon review of the July 19, 2016 letter. Plaintiff's only assertion in support of this claim is that "[i]t is contrary to the public policy of Vermont for employers to grant accommodations and then refuse to honor such accommodations, resulting in constructive discharge." ECF 12, p. 5. Plaintiff has wholly failed to address or even mention that the July 19, 2016 expressly states that Defendant reserves the right to revisit the accommodation at any time in the future. Plaintiff was fully put on notice that this was not a permanent, set in stone accommodation. Thus, Count III of Plaintiff's Amended Complaint is dismissed for failure to state a claim.

**VII. Plaintiff's Breach of Contract and Promissory Estoppel causes of action (Counts I and IV) are dismissed for failure to state a claim**

Plaintiff's remaining claims for breach of contract (Count I) and promissory estoppel (Count IV) are also dismissed for failure to state a claim.[3] There was no new contract formed by the July 19, 2016 letter, as there was no promise given to Plaintiff that he would never have to administer immunizations or that he could not be terminated in the future for failing to administer immunizations. Further, Plaintiff has no grounds to assert a promissory estoppel claim given the fact that he was fully informed that the accommodation he received was subject to change at any time.

The July 19, 2016 letter constituted a temporary exemption—it specifically states that "the company reserves the right to revisit this approval at any time." ECF 15-2, p. 3. No promise of a permanent accommodation or exemption was given. Thus, there was no new contract formed by this letter. Even if there was a new contract formed by this letter, Defendant did not breach it given that Defendant explicitly reserved the right to alter the

---

[3] Defendant asserts that these claims are based on the common law and are entirely duplicative of the rights and remedies set forth in the VFEPA. *See* ECF 15, p. 13-15. Defendant argues that these claims are therefore preempted by the VFEPA. *See id*. The court does not need to analyze this preemption issue because the claims so clearly fail on the merits.

accommodation in the future. Thus, Plaintiff has failed to state a plausible claim for breach of contract.

With respect to the promissory estoppel claim, Plaintiff claims that he relied on Defendant's established procedure for securing accommodations, completed all of the required forms, and was granted an exemption from the immunization policy. *See* ECF 12, p. 5. Plaintiff alleges that "Defendant is estopped from denying the accommodation it granted to Plaintiff" and that "[i]n denying the accommodation Defendant granted to Plaintiff, Defendant constructively discharged him." *Id*. When Defendant granted Plaintiff the accommodation in the July 19, 2016 letter, Defendant clearly and unequivocally stated that the accommodation was subject to change at any time in the future. *See* ECF 15-2, p. 3. Thus, Plaintiff never received anything along the lines of a permanent accommodation that would justify the sort of reliance on which Plaintiff bases his promissory estoppel claim. Plaintiff has therefore failed to state a plausible promissory estoppel claim.

Plaintiff's claims in Counts I and IV are dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint (ECF 15) is **granted**. Plaintiff has already amended his Complaint in response to Defendant's original motion

to dismiss, and further amendment would be futile. Thus, all counts in Plaintiff's Amended Complaint are **dismissed without leave to amend**.

DATED at Burlington, in the District of Vermont, this 20th day of March, 2018.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
